IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Case No. 7:15-cr-101** |
| | ) | |
| **CHRISTOPHER L. RIVERA** | ) | |

### MEMORANDUM OPINION

Christopher L. Rivera ("Rivera") was charged with driving while his license was revoked in violation of 36 C.F.R. § 4.2(b) while on the Blue Ridge Parkway. No law enforcement officer observed Rivera driving a vehicle. In court, Rivera pleaded not guilty. The case proceeded to trial and, at the conclusion of the evidence, I took the case under advisement to consider the fact that no park ranger personally observed Rivera driving the vehicle. Having reviewed the record and the relevant case law, I find that there was insufficient evidence to convict Rivera of the offense. Accordingly, this case must be dismissed.

### FACTUAL BACKGROUND

On or about July 10, 2015, around 10:30 PM, Ranger Dan Whitcomb and his trainee noticed a black Volkswagen Jetta parked at the first overlook on the Roanoke Mountain Loop on the Blue Ridge Parkway. Posted signs stated that the overlook was closed at sunset. The only way to reach the overlook is by driving on the Parkway, but neither ranger observed anyone driving the vehicle at any time. When the rangers approached the vehicle, there was no one inside, but they saw a marijuana blunt in plain view.[1] Ranger Whitcomb found Rivera and his girlfriend, Jordan McClure ("McClure"), at the overlook. Ranger Whitcomb learned from

---

[1] Rivera was not charged with any marijuana-related offense, as McClure took responsibility for the marijuana.

1

dispatch that McClure's driver's license was suspended, and Rivera's driver's license was revoked. Both had been properly notified of their licensure statuses. Ranger Whitcomb also learned that there was an outstanding warrant for Rivera's arrest for a probation violation, so he arrested Rivera.

Ranger Whitcomb and his trainee[2] initially questioned McClure and Rivera together. At that point, McClure stated that she drove to the overlook. After arresting Rivera, Ranger Whitcomb questioned both McClure and Rivera separately. Even after asserting multiple times that she had been driving, McClure then stated that Rivera had been driving and claimed she was initially lying to protect Rivera. When Ranger Whitcomb asked Rivera to confirm McClure's second story, Rivera did not deny that he had been the driver, but instead expressed disbelief that McClure altered her story.

At trial, McClure testified that, contrary to her second version of events, she drove to the overlook that evening. It was her mother's car, so she was driving and Rivera was the passenger. McClure testified that she became scared when Ranger Whitcomb breathalyzed her because of the marijuana and alcohol found in the vehicle.[3] Fearing a DUI, even though she was not impaired, McClure stated in the moment that Rivera actually drove. On cross examination, McClure admitted to a petty larceny conviction in 2012 and a shoplifting conviction earlier in 2015.

Rivera then testified and asserted he was not driving that evening because he did not have a license. Rivera testified that he never admitted he had been driving, although he was worried

---

[2] Ranger Whitcomb testified that the trainee was with him at all times and the trainee never questioned either person on his own.

[3] Both McClure and Rivera testified that there had been some alcohol in the car, but Ranger Whitcomb did not raise the issue and Rivera was not charged with any alcohol-related offense. McClure took responsibility for the alcohol.

that McClure was going to get a DUI. However, when Ranger Whitcomb confronted Rivera with McClure's new story, Rivera became exasperated and said "for real," as if he could not believe she changed her story. On cross examination, Rivera admitted to a petty larceny conviction in 2000 and stated he was in prison for five years for a theft crime he committed in 2009.

Rivera was charged with knowingly and intentionally driving while his license, permit, or privilege to drive was suspended or revoked, a third or subsequent time within a ten-year period, in violation of Virginia Code § 46.2-301, and thus 36 C.F.R. § 4.2(b), which prohibits any violation of state law. (Dkt. 1.) Ranger Whitcomb issued the ticket for driving while revoked to Rivera at the scene, and I later found there was probable cause to issue a summons on the charge. Rivera had three previous convictions for driving while suspended or revoked within a ten-year period, so the government sought the enhanced penalty under the state code provision.[4] Accordingly, I appointed counsel to represent Rivera.

## ANALYSIS

The issue in this case is whether there is sufficient evidence to convict Rivera, beyond a reasonable doubt, of driving while his license was revoked, even though Ranger Whitcomb did not observe or otherwise have personal knowledge that Rivera drove on the Parkway. The government argued that statements from the witnesses and Rivera provided a sufficient basis on which to convict Rivera of driving while revoked.

Under Virginia law, no resident or non-resident whose driver's license, learner's permit, or privilege to drive a motor vehicle has been suspended or revoked, shall drive any motor vehicle on any highway in the Commonwealth of Virginia until the period of suspension or

---

[4] The Virginia statute states that a third or subsequent offense occurring within a ten-year period will result in a mandatory minimum confinement to jail of ten days. Va. Code Ann. § 46.2-301(C) (West 2010) (amended July 1, 2017). Because Rivera was appropriately charged under 36 C.F.R. § 4.2(b), I am not obligated to abide by the state penalties. Regardless, the government sought a "like" punishment to that in the state code.

revocation has ended, the privilege has been reinstated, or an appropriate restricted license is issued. Va. Code Ann. § 46.2-301(B) (West 2010) (amended July 1, 2017). The individual must have had sufficient notice in order for a conviction to be maintained. Id. In the present case, it is uncontested that Rivera's license was revoked, his period of revocation had not ended, and he received sufficient notice of the revocation. Additionally, the Blue Ridge Parkway is a highway in Virginia, and is within the Western District of Virginia.

**Personal Knowledge**

Rivera maintains that Ranger Whitcomb did not personally observe Rivera driving the vehicle belonging to McClure's mother, and so the evidence is insufficient to sustain a conviction for driving while revoked. The Court of Appeals of Virginia has directly addressed the issue of an officer's personal knowledge in a driving while suspended case. In that case, a trooper came across an unoccupied car stopped in a no-passing zone on a two-lane road. Davis v. Commonwealth, 17 Va. App. 666, 668, 440 S.E.2d 426, 428 (1994). Shortly thereafter, Davis came to the scene as a passenger in another vehicle and stated he had been driving the stopped car. Id. Dispatch informed the trooper that Davis's license was suspended, after which he denied driving. Id. The trooper issued to Davis a summons for a violation of section 46.2-301, but never obtained a warrant. Id. Before trial, Davis argued that the trooper arrested him for a misdemeanor without a valid warrant. Id. The trial court rejected that argument, but instructed the jury that a police officer may not arrest an individual for a misdemeanor except when he has personal knowledge that an offense was committed in his presence.[5] Id. at 669, 429.

---

[5] Virginia law states that "[a]n offense [is] committed within the presence of an officer . . . when he has direct personal knowledge through his sight, hearing, or other senses that [the misdemeanor] is then and there being committed." Durant v. City of Suffolk, 4 Va. App. 445, 447, 358 S.E.2d 732, 733 (1987) (citing Va. Code Ann. § 19.2-81 (West 2014) (amended Jan. 15, 2018) (authorizing police officers to make arrests without a warrant when probable cause exists)).

On appeal, the court held that the offense of operating a vehicle with a suspended license ends when the individual stops driving. Id. at 672, 430. Thus, because no part of the offense occurred in the trooper's presence, the arrest of Davis was unlawful because the trooper lacked authority to arrest without a warrant. Id. Accordingly, the summons issued was not valid process, and the trial court erred in trying the charge. Id.

In the present case, Ranger Whitcomb testified that he did not see Rivera driving the vehicle, nor did he otherwise have any personal knowledge of him doing so. I took the case under advisement to further research this issue and its applicability to Rivera's case. While there is some other Virginia case law arising out of Davis,[6] there is no federal case from a court in the Fourth Circuit addressing an officer's personal knowledge in a driving while suspended or revoked case.

Although federal case law lacks on this particular issue, the Fourth Circuit has held that the Fourth Amendment does not prohibit warrantless arrests for misdemeanors committed outside of a law enforcement officer's presence. Street v. Surdyka, 492 F.2d 368, 372 (4th Cir.

---

[6] For example, in Harris v. Commonwealth, the Virginia Court of Appeals affirmed a trial court's conviction for driving with a suspended license, even though the officer there did not see the individual in the car. 39 Va. App. 670, 672–73, 576 S.E.2d 228, 229 (2003). Harris had parked his car, with the flashers on, on a one-way road, and the officer approached him when he was walking back to the car. Id. at 672, 229. Harris admitted to the officer that he drove the car for work and had just made a delivery. Id. at 673, 229. Oddly, the trial court found that the summons issued for driving while suspended was valid: the requirement that the offense be committed in the officer's presence was satisfied when the defendant told the officer at the scene that he had been driving. Id.
   The dissent argued that, under the necessary strict construction of a criminal statute, section 46.2-301 required the officer to see the defendant driving; accordingly, the officer had to have seen Harris actually put the vehicle in motion. Id. at 679, 232–33. The officer did not observe Harris driving, so the officer could not validly issue a summons on the charge. Id. at 679, 233. Alternatively, even if the prohibition against "driving" included "operating" a vehicle, the officer still did not have authority to charge Harris. "Operating" is defined as "acts which engage the machinery of the vehicle that, alone or in sequence, will set in motion the motive power of the vehicle." Id. (citing Gallagher v. Commonwealth, 205 Va. 666, 669, 139 S.E.2d 37, 39 (1964)). The officer did not see Harris even in the vehicle at any time, and evidence that the flashers were blinking, standing alone, does not prove that Harris operated the car. Id. at 680, 233. Accordingly, the dissent argued that the summons was unlawful. Id.

1974).⁷ Thus, in the Fourth Circuit, an officer only needs probable cause to make a warrantless arrest for a misdemeanor committed outside of his presence. Id. at 371–73. The Street court noted that states are free to impose greater restrictions on arrests, but "their citizens do not thereby acquire a greater federal right." Id. at 372. Hence, as demonstrated in Davis, Virginia courts have adopted greater restrictions in driving while suspended or revoked cases.

**Sufficiency of Evidence**

This case turns on whether the evidence is sufficient to convict Rivera for driving while his license was revoked in light of the fact that Ranger Whitcomb did not personally see Rivera driving. Under the facts of this case, I find that the evidence fails to prove beyond a reasonable doubt that Rivera was driving that evening and, thus, is insufficient to sustain a conviction.

Here, Ranger Whitcomb discovered an unoccupied vehicle at a closed overlook, which was accessible only by driving on the Parkway. Ranger Whitcomb found Rivera and McClure at the overlook, and both had been in the car prior to stopping there. Ranger Whitcomb never saw either individual driving the car (much less physically in it). Ranger Whitcomb learned from dispatch that Rivera's license was revoked, and that there was an active warrant out for his arrest. He then arrested Rivera based on the outstanding warrant.

The evidence is sufficient to show that either Rivera or McClure drove to the outlook, but is insufficient to prove who actually did. Unfortunately, Ranger Whitcomb did not see anyone

---

⁷ More recently, the Fourth Circuit declined to address the presence issue further, but recognized that several other circuits have held that the Fourth Amendment contains no "in the presence" requirement for misdemeanors. United States v. McNeill, 484 F.3d 301, 311 (4th Cir. 2007). Regardless, district courts in this Circuit have routinely adopted the Street holding. See, e.g., Cadmus v. Williamson, Civil Action No. 5:15–cv–00045, 2016 WL 929279, at *8–9 (W.D. Va. Feb. 1, 2016) (finding arrest for misdemeanor assault and battery, which was not committed in officer's presence, valid because probable cause supported arrest); United States v. Hall, Nos. 2:04PO00254, 2:04PO00255, 2005 WL 767115, at *3 (W.D. Va. Apr. 5, 2005) (holding only probable cause required to make warrantless arrest for misdemeanor traffic offenses committed outside a national park ranger's presence); Drewitt v. Pratt, Civ. A. No. 2:92CV13, 1992 WL 516032, at *3 (E.D. Va. Oct. 9, 1992) (adopting Street in reckless driving case). The Supreme Court has refused to address the issue. See Atwater v. City of Lago Vista, 532 U.S. 318, 340 n.11 (2001).

driving, or even see the car in motion. Additionally, if Rivera was actually driving, his offense of driving while his license was revoked ended when the driving ended. Ranger Whitcomb never had the opportunity to observe Rivera driving because the offense was already completed.

Additionally, there is some dispute as to whether Rivera admitted to Ranger Whitcomb that he had driven after McClure suddenly changed her story.[8] I find the credibility of both Rivera and McClure problematic in light of their rapidly-changing stories and offense histories. Both individuals were also facing certain consequences if either drove that night. However, as Rivera's counsel argued in closing, a number of circumstances point to McClure driving the vehicle. The car belonged to McClure's mother, McClure stated multiple times (against her interest) that she had been driving, and changed her story only after she feared she may face a DUI charge. Considering these factors, there was reasonable doubt that Rivera drove because it is just as likely that McClure drove instead.

## **CONCLUSION**

I find that the government did not prove beyond a reasonable doubt that Rivera drove the

---

[8] In Davis, the court held that the summons for the driving while suspended charge was insufficient, but proceeded to find that the evidence was sufficient to sustain a conviction. The court recognized that the jury made a credibility determination in evaluating whether the defendant confessed. Davis, 17 Va. App. at 674, 440 S.E.2d at 431. The trooper's testimony concerning the confession, together with the location and presence of the car on the highway, and the information from dispatch that Davis's license was suspended, sufficiently corroborated the confession. Id.
  I find this holding perplexing, seeing as the Court remanded the driving while suspended charge altogether for insufficient process. Regardless, I do not find that Rivera's confession was as clear as the driver's in Davis, and as explained below, the evidence is insufficient to corroborate his illusory admission.
  I similarly find Harris v. Commonwealth to be unpersuasive. The criminal statute reads, "no [person whose] privilege to drive a motor vehicle has been suspended or revoked . . . shall thereafter drive any motor vehicle . . . on any highway in the Commonwealth." Va. Code Ann. § 46.2-301(C) (West 2010) (amended July 1, 2017). The dissent noted that to drive means to put a vehicle in motion, which comports with the plain meaning of the term. "Drive," in the context of vehicles, means, "[t]o guide, control, or direct (a vehicle)," or, "[t]o operate a car or other vehicle." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (New College ed. 1979). And yet the Harris majority held that the presence requirement was satisfied not because the officer observed Harris guiding, controlling, or directing the car, but because Harris *made an in-person statement* to the officer that he had driven the car to where it was parked. In my view, this directly contradicts the personal knowledge requirement, as the officer did not use his own senses to observe Harris guiding, controlling, or directing the car. The officer hearing Harris make a statement does not satisfy the requirement that the officer must see Harris doing the act he makes the statement about. Regardless, I am not bound by this holding in Harris, just as I am not bound by the holdings in Davis.

7

car to the overlook that night. Without personal knowledge from Ranger Whitcomb that Rivera was actually driving, the evidence is insufficient to support a conviction. Additionally, there is reasonable doubt that Rivera was the driver because other circumstances indicate that McClure could just as likely have been the driver. Accordingly, the government failed to prove that Rivera violated Virginia law by driving while his license was revoked. Therefore, the charge that Rivera violated state law, as prohibited by 36 C.F.R. § 4.2(b), must be dismissed.

        Entered: December 18, 2018

        *Robert S. Ballou*

        Robert S. Ballou
        United States Magistrate Judge